This case involves defendant-appellant Richard A. Goerner's appeal of his convictions on three counts of criminal child enticement under R.C. 2905.05. The three counts involved three alleged victims. Though Goerner's conduct, which involved driving the alleged victims to K-mart and back, was not exemplary, we hold that it was not criminal.
Goerner, who was twenty-two years old, went to the home of Lisa Simpson and her fiance, Greg Rowe, to install a stereo. When he arrived at the home, Simpson and Rowe were not there, but Amanda Doyle and Desiree Jones were. Doyle, who was thirteen, was Simpson's daughter. Jones, who was also thirteen, was Doyle's friend.
While Goerner was waiting for Simpson and Rowe to get home, he talked with Doyle and Jones. At one point, the girls asked Goerner to play "Truth or Dare," but the game never occurred. At another point, the girls tried to fix Goerner up with Jones's aunt. Also, Goerner took the girls, at their request, to a United Dairy Farmers store and back. The girls thought that Goerner was "cute." When they disclosed their ages to Goerner, he stated that "age was just a number."
Eventually, Simpson and Rowe came home. While Goerner was helping to install the stereo, another girl, Megan Hammond, who was twelve, arrived. After the stereo was installed, the girls walked outside with Goerner. Doyle and Jones hugged him, and Doyle asked for his pager number. Goerner gave her the number and then left.
Later that evening, the three girls went to a game room in their neighborhood. Doyle paged Goerner and asked him to meet them. Goerner met the girls in his car. The girls, who did not have permission from their parents to do so, got in the car, and Goerner drove them to a local K-mart. As they returned to the game room, they were seen by Hammond's father and Simpson, who were driving in the area. Based on the presence of the girls in his car that evening, Goerner was charged with three counts of criminal child enticement under R.C. 2905.05.
A bench trial was held, and Goerner was found guilty of all three counts. Goerner now appeals, asserting in two assignments of error (1) that his convictions were based on insufficient evidence and (2) that his convictions were against the manifest weight of the evidence. We hold that Goerner's convictions were based on insufficient evidence. Thus, we do not need to address the manifest-weight issues.
R.C. 2905.05 provides, in relevant part, "No person, by any means and without privilege to do so, shall knowingly solicit, coax, entice, or lure any child under fourteen years of age to enter into any vehicle * * *."[1] Here, the sole issue involves whether Goerner solicited, coaxed, enticed, or lured any of the girls into his car.
The evidence presented at trial reveals that it was not Goerner's idea to have the girls get in the car with him; rather, it was the girls' idea. Doyle testified at trial that it was her idea to page Goerner from the game room, and that she asked Goerner if she could get into the car because "it was cold." She explained that Goerner did not attempt to convince her to get into the car with him or threaten her in any way. Jones corroborated Doyle's testimony. She explained that she followed Doyle, who had asked her to get into the car. She stated that she got into the car because she "felt like it." She also testified that Goerner did not say anything to convince her or threaten her to get inside.
Only Hammond stated that she did not want to get into the car with Goerner. She stated that he threatened her by saying, "Get in the car or I'm going to do something to you." But Hammond's testimony was directly contradicted by that of Doyle and Jones. Further, Hammond's testimony regarding the alleged threat was vague. It defies common sense to conclude that Goerner threatened Hammond by saying that he was going to "do something" to her. People do not talk that way — and the words themselves are too vague to constitute a direct threat. In fact, the trial court specifically found that there was no threat, stating, "It's clear to me that the girls got in voluntarily." If no threat occurred, then there is no basis whatever for the conviction.
Simply put, in view of the testimony of all three girls, there is not enough evidence — even in the light most favorable to the prosecution — that Goerner solicited, coaxed, enticed, or lured any of the girls into his car. The girls paged Goerner — most enticees do not page their enticer. The record reflects that Doyle and Jones took the initiative of getting into the car. Under these circumstances, we conclude that the evidence was insufficient to find Goerner guilty of violating R.C. 2905.05.
Further, contrary to an argument by the state, the record does not reveal that, beginning with his behavior at Simpson and Rowe's house, Goerner began some sort of plan to later lure the girls into his vehicle. In fact, while Goerner was waiting for Simpson and Rowe to return home, the record shows that Doyle and Jones were the ones who initiated the contact with him: they were the ones who asked him to play Truth or Dare (which never happened); they were the ones who tried to fix him up with Jones's Aunt; they were the ones who asked to go to United Dairy Farmers; they were the ones who hugged him; and Doyle was the one who asked for his pager number. While the girls were young and most definitely naive, the record reveals that they were old enough to know what they were doing.
Obviously, Goerner should have been mature enough to know that his actions were foolish; but not all foolish actions are criminal. Goerner was foolish in being so willing to reciprocate the attention that he was receiving from these younger girls, who apparently had a crush on him and were impressed by his car. His actions were obviously subject to misinterpretation. But, based on the record, there is insufficient evidence to elevate his conduct to a criminal level: his actions were not the type of conduct that R.C. 2905.05 was designed to prevent. Cases dealing with R.C. 2905.05 involve defendants who do the calling and summoning, and enticing, not the other way around.[2] Therefore, we reverse Goerner's convictions and discharge him from further prosecution.
Judgment reversed and appellant discharged.
Hildebrandt, P.J., and Winkler, J., concur.
[1] R.C. 2905.05(A).
[2] See, e.g., Reynoldsburg v. Johnson (1992), 78 Ohio App.3d 641,605 N.E.2d 996 (defendant promised cake to the victims if they would enter his car); State v. Hurd (1991), 74 Ohio App.3d 94,598 N.E.2d 72 (defendant stated to the victims that he "had something going on in his car"); State v. Long (1989), 49 Ohio App.3d 1,550 N.E.2d 522 (defendant offered money to the victim if she would get into his car).